UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

RICHARD LEE,

Defendant.

**Hon. Hugh B. Scott**

10CR298A

**Order**

This matter is referred to the undersigned to hear and determine pretrial matters pursuant to 28 U.S.C. 636 (b)(1)(A) and, pursuant to 28 U.S.C. 636(b)(1)(B), to submit proposed findings of fact and recommendations for the disposition of any motion excepted by 28 U.S.C. 636(b)(1)(A) (Docket No. 13).

The instant matter before the Court are (a) the Defendant's omnibus motion which seeks the following relief: filing of a Bill of Particulars; production of expert disclosure; discovery; Federal Rules of Evidence 403, 404(b), and 609 discovery; Federal Rules of Evidence 702, 703, and 705 discovery; disclosure of Brady and Giglio materials; disclosure of informants; early disclosure of Jencks Act material (Docket No 17); and (b) defendant's motion to return physical evidence (Docket No. 18). Separately, defendant moved to suppress statements and evidence (Docket No. 17) and to dismiss counts of the Indictment (Docket No. 18); these motions will be considered together in a separate Report & Recommendation (Docket No. 24).

The Government has filed responding papers (Docket No. 20) and, at a status conference, the motions were deemed submitted on April 28, 2011 (Docket No. 23).

## BACKGROUND

Defendant is charged with one count of smuggling a Honda Civic from Canada into the United States, in violation of 18 U.S.C. § 545, and making a false statement to officers of the United States Customs and Border Protection, in violation of 18 U.S.C. § 1001(a)(2) (Docket No. 12, Indict.). The Indictment also alleges a criminal forfeiture of any and all property involved in the first count, namely the 1997 Honda Civic (id.). According to the Government (Docket No. 20, Gov't Response at 2-3), on February 22, 2010, defendant attempted to enter the United States from Canada via the Rainbow Bridge Port of Entry while driving a 1997 Honda Civic with New Jersey dealer license plates. As noted by the Government,

> "Lee was initially questioned by a Customs and Border Protection (CBP) Officer at the primary inspection lane and claimed to be the owner of the vehicle. Lee was referred to secondary inspection due to the license plates being listed as stolen. While at secondary inspection, Lee could not produce any documentation regarding the vehicle. A record check of the Vehicle Identification Number (VIN) revealed that the 1997 Honda Civic was registered to an individual in Canada.
>
> "While at secondary inspection, Lee was asked if he was importing anything into the United States and if he was transporting any currency greater than $10,000 (U.S. Dollar equivalent). Lee gave negative responses to these inquires [sic] and executed Customs Declaration Form 6059B with the same negative declarations. CBP Officers then found the total sum of $9,850 (U.S. Dollars) and $565 (Canadian Dollars) in Lee's possession. CBP Officers then contacted agents from Immigration and Customs Enforcement (ICE), who responded to the port and also interviewed Lee. Upon being provided his Miranda warnings by the ICE agents, Lee voluntarily agreed to waive those rights and speak to the agents about the vehicle in question and his travel to Canada. Upon concluding this interview, Lee was charged with the above-noted criminal violations."

(id.) Among the items seized were Canadian dealer plates (see Docket No. 18, Def. Atty. Decl. at 5).

DISCUSSION

I. Bill of Particulars

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the Court may direct the filing of a Bill of Particulars. Bills of Particulars are to be used only to protect a defendant from double jeopardy and to enable adequate preparation of a defense and to avoid surprise at trial. United States v. Torres, 901 F.2d 205 (2d Cir. 1990); see United States v. Persico, 621 F. Supp. 842, 868 (S.D.N.Y. 1985) (citing Won Tai v. United States, 273 U.S. 77, 82 (1927)). The Government is not obligated to "preview its case or expose its legal theory" United States v. LaMorte, 744 F. Supp. 573 (S.D.N.Y. 1990); United States v. Leonelli, 428 F. Supp. 880 (S.D.N.Y. 1977); nor must it disclose the precise "manner in which the crime charged is alleged to have been committed," United States v. Andrews, 381 F.2d 377 (2d Cir. 1967). Notwithstanding the above, there is a special concern for particularization in conspiracy cases. United States v. Davidoff, 845 F.2d 1151 (2d Cir. 1988).

Upon review of the Indictment, the Court finds that defendant **is not entitled** to a Bill of Particulars inasmuch as the defendant is sufficiently advised of the charges against him to allow for the proper preparation of a defense, to avoid surprise at trial, and to protect the defendant from double jeopardy.

II. Expert Disclosure

Pursuant to Rule 16(a)(1)(E), defendant seeks a written summary of any expert testimony that the government intends to use in its direct case, along with the expert's qualifications, and the basis for the expert's opinion, whether or not the expert files a report. He also seeks

disclosure of any hearsay evidence intended to be introduced by the Government at trial (Docket No. 17, Def. Motion at 12).

The Government states that it will comply with defense requests regarding expert disclosure (Docket No. 20, Gov't Response at 12). This response **is deemed sufficient**.

III. Discovery

Defendant next seeks various items of pretrial discovery. Although there is no general constitutional right to pretrial discovery in a federal criminal case, a defendant does have a pretrial discovery right with respect to certain matters. For example, under the Fifth Amendment's due process clause, a defendant is entitled to specific exculpatory evidence which is material either to guilt or punishment. In addition, the government has certain disclosure obligations under Rule 16 of the Federal Rules of Criminal Procedure and the Jencks Act, 18 U.S.C. § 3500.

Defendant seeks any written or oral statements made by him which are within the possession custody or control of the Government, or which through the exercise of due diligence, may become known to the Government (Docket No. 17, Def. Atty. Decl. at 5).

Rule 16(a)(1)(A) provides that, upon request, the Government must disclose any written or recorded statements made by a defendant, before or after arrest, in response to interrogation by any person known to the defendant to be a Government agent; and recorded testimony of the defendant before the grand jury which relates to the offense charged.[1] Failure of the Government

[1]Rule 16 (a)(2) expressly provides that subdivision (a)(1) does not authorize disclosure of statements made by government witnesses or prospective government witnesses except as provided in 18 U.S.C. §3500, the Jencks Act.

to disclose a defendant's statements to a Government agent may rise to the level of constitutional due process violation, Clewis v. Texas 386 U.S. 707 (1967).

In this case, the Government has represented that it believes that it has or will disclose all statements made by the defendant (Docket No. 20, Gov't Response at 11). To the extent that the Government has not yet done so, pursuant to Rule 16 (a)(1)(A) the Government is hereby **directed to produce** all such statements made by defendant.

Defendant has also requested production of all statements of any co-conspirator, whether charged or uncharged (Docket No. 17, Def. Atty. Decl. at 5). This request is **denied**. It is well established that the statements of co-conspirators are not discoverable under Rule 16(a). In re United States, 834 F.2d 283, 286 (2d. Cir. 1987); United States v. Percevault, 490 F.2d 126 (2d Cir. 1974); United States v. Green, 144 F.R.D. 631, 638 (W.D.N.Y. 1992) (Heckman, Mag. J.). The Jencks Act provides the exclusive procedure for discovering statements that government witnesses have given to law enforcement agencies. United States v. Covello, 410 F.2d 536, 543 (2d. Cir.), cert. denied, 396 U.S. 879 (1969).

Pursuant to Rule 16(a)(1)(C), defendant also seeks production of various documents, books, records, photographs, and other tangible objects in the possession, custody or control of the government (Docket No. 17, Def. Atty. Decl. at 11).

The Government agrees to furnish tangible objects in ICE custody (Docket No. 20, Gov't Response at 12). The Government states its intention to use the items in evidence against defendant and refuses to return the items (id.), apparently including certain Canadian license plates defendant possessed at the border (discussed below in Part VIII regarding return of physical evidence).

Defendant has requested the production of the results of any physical or mental examinations or scientific tests, including but not limited to any such tests regarding the cocaine or firearms referenced in the indictment (Docket No. 17, Def. Atty. Decl. at 6). The Government also agrees to furnish these tests and experiment results (Docket No. 20, Gov't Response at 12).

The Court assumes that the Government's production has satisfied the defendant's request in this regard.

Defendant seeks disclosure of any visual or audio identification procedures utilized in this case; specifying the procedure, the participants and the circumstances; any visual or audible representation of a person or voice used for identification purposes (Docket No. 17, Def. Atty. Decl. at 7).

The Government has not directly responded to this specific request. The record in this case does not reflect whether or not any such procedures were used. The Government's complete lack of response on this issue does not provide the Court with any assistance in this regard. In any event, inasmuch as pretrial identification issues may raise questions of due process under the Fifth and Fourteenth Amendments, with the exception of the identity of any informant or witness, the government is directed to provide the defendants with information regarding any visual or audio identification procedures used in this case, see Green, supra, 144 F.R.D. at 639.

IV. Federal Rules of Evidence 403, 404(b), and 609

Defendant requests disclosure of all evidence of prior bad acts that the government intends to use in its case-in-chief, pursuant to Federal Rule of Evidence 404(b). He also requests disclosure of all evidence of prior bad acts that the government intends to use for impeachment of the defendant should he testify at trial, pursuant to Rules 608(b) and 609(a).

Rule 404 requires that the defendant be given "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to use at trial." The Government has represented that it has provided all such material to the defendant in its voluntary discovery (Docket No. 20, Gov't Response at 10). This **is sufficient** in this case.

V. Brady and Giglio Material

Defendant next has requested that the Government disclose all materials potentially favorable to the defendant, including information to be used for the impeachment of the Government's witnesses, as required under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, and material revealing any agreement, concession or grant of immunity to a Government witness under Giglio v. United States, 405 U.S. 150 (1972), and its progeny (Docket No. 17, Def. Motion at 13-15, 16-21). Brady material, as those cases have come to define it, includes all evidence which may be favorable to the defendant and material to the issue of guilt or punishment. Such evidence includes "[a]ny and all records and/or information which might be helpful or useful to the defense in impeaching . . . [and] [a]ny and all records and information revealing prior misconduct . . . attributed to the [Government's] witness." United States v. Kiszewski, 877 F.2d 210 (2d Cir. 1989).

Defendant's motion identifies numerous specific categories of documents encompassing both exculpatory and impeachment Brady materials which he seeks to obtain. The Government's response is that it acknowledges its affirmative duty and agrees to provide impeachment Brady material as well (Docket No. 20, Gov't Response at 6, 8-9).

This Court believes that fundamental fairness and the constitutional due process requirements which underlie Brady mandate that the Court have some discretion with respect to the timing of the disclosure of such information, even if it may be considered combined Brady/Jencks material. Indeed, even with respect to purely Jencks Act materials, the Second Circuit has stated that "pretrial disclosure will redound to the benefit of all parties, counsel and the court. Indeed, sound trial management would seem to dictate that Jencks Act material should be submitted prior to trial . . . so that those abhorrent lengthy pauses at trial to examine documents can be avoided." Percevault, supra, 490 F.2d at 132; Green, supra, 144 F.R.D. at 638.

The instant case does not appear to be unusually complex. Balancing all of the above, the Court concludes that disclosure of such impeachment material, if any exists, in accordance with the common practice in this district (prior to trial so long as it is disclosed in sufficient time for the defendant to have a fair opportunity to utilize the information at trial) **is sufficient** in this case.

VI. Identity of Informants

Defendant next seeks the pre-trial disclosure of the identity of any informants in this case (Docket No. 17, Def. Motion at 15-16). The Government argues that defendant has not made a showing for entitlement to this information. It declares that no informant was used in this case. (Docket No. 20, Gov't Response at 9.) The Government is not required to furnish the identities of informants unless it is essential to the defense. Roviaro v. United States, 353 U.S. 52, 60-61 (1957); United States v. Saa, 859 F.2d 1067, 1073 (2d Cir.), cert. denied, 489 U.S. 1089 (1988). Nor does Rule 16 require the Government to disclose the names of witnesses prior to trial. United States v. Bejasa, 904 F.2d 137, 139 (2d Cir.), cert. denied, 498 U.S. 921 (1990).

Moreover, the Government has stated that it believes that disclosure of the informant's identification would subject the informant to personal danger from retribution by the defendant and others and jeopardize an on-going investigation (Docket No. 21, Gov't Response at 23-26).

Defendant has not established that the pre-trial disclosure of the identities of any informants is essential to his defense. This request is **denied**.

VIII. Jencks Act

Defendant next seeks immediate disclosure of material subject to the Jencks Act, 18 U.S.C. § 3500, or at least 48 hours prior to trial (Docket No. 17, Def. Atty. Decl. at 21). The Government is willing to produce Jencks Act materials two weeks before trial, or as ordered by the District Court (Docket No. 20, Gov't Response at 13). The Jencks Act governs the disclosure of information and statements relating to the Government's witnesses. Generally, according to the Jencks Act, the Government need not disclose such information regarding its witnesses until after the witness has testified at trial. In this case, the Government agrees to disclose this information as late as two weeks before trial or when ordered by the District Court. Defendant has not established that prior disclosure of Jencks material is essential to the preparation of a defense in this case.

VIII. Return of Physical Evidence

Finally, defendant moves for return of the license plates seized with the seizure of the Honda Civic (see Docket No. 18, Def. Atty. Decl. at 3-5). He offers to substitute the plates for photographic evidence of the plates and inventories of the contents of the vehicle and is willing to stipulate to the introduction of the photographic evidence rather than the plates themselves (id. at 5). The Canadian dealer where defendant obtained the plates is having difficulty from the

Canadian government in having its automobile dealer license renewed because these dealer plates were not returned to the dealer (id.).

The Government declines to return the items since they will be used as trial exhibits (Docket No. 20, Gov't Response at 12) and does not comment on the defense stipulation to photographs of the license plates.

The Government's position appears to derive from the best evidence rule codified in Article X of the Federal Rules of Evidence, evidentiary rules for the contents of writings and recordings, see Fed. R. Evid. 1001(1). Best evidence rule does not apply to proving the contents of uninscribed physical objects or things, 6-1001, Weinstein's Federal Evidence § 1001.03 (2011); where the object is inscribed (such as license plates), courts have admitted secondary evidence of the inscribed item when it describes the object, id.; see Chandler v. United States, 318 F.2d 356, 357 (10th Cir. 1963) (allowed testimony of physical description of glass jars); Driggers v. United States, 384 F.2d 158, 159 (5th Cir. 1967); United States v. Duffy, 454 F.2d 809, 812 (5th Cir. 1972). The Government appears to contend that the best evidence rule should apply to require production of the actual Canadian license plates. The issue is whether defendant possessed these plates when he entered the United States, not their content (save the province which issued the plates and any legend on them indicating that they were dealer or other commercial plates). Thus, the best evidence rule of Fed. R. Evid. 1001, applies to writings and not to physical objects and this rule should not require the production of the actual plates when adequate substitutes (their photographs, see 6-1001 Weinstein's Federal Evidence, supra, §§ 1001.24, 1001.03) are readily available.

These Canadian plates are collateral to the smuggling and false statement charges pending and, if needed to be produced, could be introduced by alternative means. A non-party to this case, the Mississauga car dealer, needs these plates returned in order to renew its operating license. But Federal Rule of Criminal Procedure 41(g) only allows "a person aggrieved" by an unlawful search and seizure to move to recover the seized items with the Court returning the property to the movant. Here, defendant admits that he does not own the seized Canadian plates; instead, Maru Yichi Motors owns the dealer plates (see Docket No. 18, Def. Atty. Decl.). This dealer can seek to recover these plates, independent of this action, see In re 4330 N. 35th St., Milwaukee, Wis., 142 F.R.D. 161, 164 (E.D. Wis. 1992) (Goodstein, Mag. J.). Furthermore, defendant fails to articulate how the seizure of these plates was illegal.

Therefore, defendant's motion to return the Canadian dealer license plates (Docket No. 18, Def. Atty. Decl. at 3-5) is **denied**.

CONCLUSION

For the reasons stated above, defendant's omnibus motion for various discovery and disclosure relief (Docket No. 17) is **granted in part, denied in part**, as specified above. Defendant's motion for return of physical evidence (Docket No. 18, Def. Atty. Decl. at 3-5) is **denied**.

So Ordered.

/s/ Hugh B. Scott

Honorable Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
May 13, 2011